UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH MAKAJ, BIANCA MAKAJ, GARRETT PATRICK BOELENS and DOUGLAS MARTINEZ, on behalf of themselves and others similarly situated,<br><br>                              Plaintiffs,<br><br>             -against-<br><br>LIMNI LLC, dba LIMNI MEDITERRANEAN KITCHEN, MEZZALUNA DUE INC. dba MEZZLUNA PIZZERIA & RESTAURANT, ROBERT PREZZZANO and NISIM SACHAKOV,<br><br>                              Defendants. | Case No.:<br><br>**RULE 23 CLASS ACTION AND FLSA COLLECTIVE <u>ACTION COMPLAINT</u>**<br><br> **Jury Trial Demanded** |

Plaintiffs, Elizabeth Makaj, Bianca Makaj, Garrett Patrick Boelens and Douglas Martinez (each a "Plaintiff" or all together "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, by and through their undersigned attorneys, Valiant Law, complains against Defendants, Limni LLC dba Limni Mediterranean Kitchen ("Limni"), Mezzaluna Due Inc. dba Mezzaluna Pizzeria & Restaurant ("Mezzaluna") (together the "Restaurants"), Robert Prezzano ("Prezzano"), and Nisim Sachakov ("Sachakov") (all Defendants collectively referred to as "Defendants"), and alleges as follows:

<u>**INTRODUCTION**</u>

1.      This lawsuit arises from serious wage violations by Defendants, which are the owners and operators of two restaurants.  While Defendants profited for years, hard-working employees – servers, bartenders, hosts, cooks, and others – were forced to work off the clock, not paid overtime and paid well below minimum wage.

3.      Plaintiffs on their own behalf, and on behalf of all other similarly situated employees, allege violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the New York Labor Law ("NYLL"), arising from Defendants' failure to pay non-exempt employees proper compensation, minimum wages, overtime compensation, and "spread of hours" premiums.

4.      Due to violations of the FLSA, Plaintiffs are entitled to recover from the Defendants: (1) unpaid minimum wages; (2) unpaid overtime compensation; (3) liquidated damages; (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

5.      Due to violations of the New York Labor Law, Plaintiffs are entitled to recover from the Defendants: (1) unpaid wages and minimum wages; (2) unpaid overtime compensation; (3) unpaid "spread of hours" premiums for each day they worked a shift in excess of ten (10) hours; (4) unpaid uniform cost and maintenance compensation; (5) liquidated damages and civil penalties pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act; (6) pre-judgment and post-judgment interest; and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district and Defendants conducted business and reside in this district. Further, Plaintiffs' and similarly situated employees' claims arise out of or relate to the Defendants' minimum contacts with the forum state.

## THE PARTIES AND SUMMARY OF ALLEGATIONS

8.     Plaintiff Elizabeth Makaj is an adult individual who is a resident of the State of New York. Plaintiff Elizabeth Makaj was employed by Defendants in various "front of house," roles, such as bartending, hosting and serving, among other duties and at all times relevant, was a covered employee within the meaning of the FLSA and NYLL.

9.     Plaintiff Elizabeth Makaj was continuously employed by Defendants Putnam County, New York, from in or about March 2019 through January 2024.

10.     Plaintiff Bianca Makaj is an adult individual who is a resident of the State of New York. Plaintiff Bianca Makaj was employed by Defendants in various "front of house," roles, such as bartending, hosting and serving, among other duties and at all times relevant, was a covered employee within the meaning of the FLSA and NYLL.

11.     Plaintiff Bianca Makaj was continuously employed by in Putnam County, New York, from in or about August 2020 through January 2024.

12.     Plaintiff Garrett Patrick Boelens is an adult individual who is a resident of the State of New York. Plaintiff Boelens was employed by Defendants in various "front of house," roles, such as bartending, hosting and serving, among other duties and at all times relevant, was a covered employee within the meaning of the FLSA and NYLL.

13.     Plaintiff Boelens was continuously employed by Defendants Putnam County, New York, from in or about May 2021 through January 2024.

14.     Plaintiff Douglas Martinez is an adult individual who is a resident of the State of New York. Plaintiff Martinez was employed by Defendants in various "back of house" roles, such as food preparation, cooking and cleaning, among other duties and at all times relevant, was a covered employee within the meaning of the FLSA and NYLL.

15.    Plaintiff Martinez was continuously employed by Defendants in Putnam County, New York, from in or about December 2020 through January 2024.

16.    Upon information and belief, at all times relevant, Defendant, Limni LLC dba Limni Mediterranean Kitchen is domestic limited liability company, existing under and doing business in the State of New York with a principal address of 47 Route 311, Kent, NY 10512.

17.    Upon information and belief, at all times relevant, Defendant, Mezzaluna Due Inc. dba Mezzaluna Pizzeria & Restaurant is a domestic business corporation, existing and doing business in the State of New York with a principle business address of 22 Arbor Court, Holmes, NY 12531, and operates a restaurant at 1511 NY-22 Brewster, NY 10509, where Plaintiffs worked.

18.    During each of the six (6) most recent years, and prior thereto, Defendants continuously owned and operated a restaurant and bar which served food and drink to the general public.

19.    Defendants Limni and Mezzaluna are "restaurants" within the meaning of the New York Labor Law and regulations.

20.    At all times relevant to this action, Defendants jointly employed Plaintiffs and other similarly situated employees.

21.    Each Defendant has had substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

22.    During all times relevant, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

23.    Defendants Sachakov and Prezzano, create and implement crucial business policies, including decisions concerning the number of hours the employees are required to work,

the amount of pay that the employees are entitled to receive, and the method and manner by which the employees are to be paid.

24.    Limni and Mezzaluna are operated and controlled by Prezzano, as General Manager of operations. Prezzano and Sachakov each are a director, supervisor, managing agent and proprietor of Limni, who actively participated, and continues to actively participate in the day-to-day operations of Limni, and acted willfully and intentionally and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with Limni.

25.    Defendants Sachakov and Prezzano exercised sufficient control over Limni's day-to-day operations as to be considered an employer of Plaintiffs and others similarly situated, under the FLSA and New York Labor Law.

26.    Throughout the relevant time period, Defendants were in charge of and had control over Limni's policies and procedures with respect to its unlawful policies, acts and practices alleged herein, including but not limited to, payroll, time-keeping, scheduling, and otherwise running the business of Limni.

27.    Defendants Sachakov and Prezzano each create and implement crucial business policies, including decisions concerning the number of hours the employees are required to work, the amount of pay that the employees are entitled to receive, and the method and manner by which the employees are to be paid.

28.    Defendant Sachakov is an owner, officer member, director and/or manager of Mezzaluna and Limni, and is an director, supervisor, managing agent and proprietor, who actively participated, and continues to actively participate in the day-to-day operations of Mezzaluna, and

acted willfully and intentionally and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with Mezzaluna.

29. Defendants Sachakov and Prezzano each exercised sufficient control over Mezzaluna's day-to-day operations as to be considered an employer of Plaintiffs and others similarly situated, under the FLSA and New York Labor Law.

30. Throughout the relevant time period, Defendants were in charge of and had control over Mezzaluna's policies and procedures with respect to its unlawful policies, acts and practices alleged herein, including but not limited to, payroll, time-keeping, scheduling, and otherwise running the business of Mezzaluna.

31. Although Limni and Mezzaluna may be separate and distinct business entities, they engage in related activities. The two companies shared Plaintiffs, as well as other employees, acted in the interest of each other with respect to employees, paid their employees by the same methods, shared control over their employees, and are themselves under common control and management. Defendants shared control over their employees, hired and fired employees, administered disciplinary procedures, used the same Human Resources employees, supervised employee, maintained payroll provided insurance, controlled the terms and conditions of employees' employment.  Defendants were in charge of and had control over Defendants' policies and procedures with respect to its unlawful policies, acts and practices alleged herein, and Defendants share a common commercial business purpose.

32. The entities are owned, operated, and controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provides mutually

supportive services to the substantial advantage of the other, such that each entity may be treated as a single enterprise and/or joint employers.

33.    The performance of Plaintiffs' job responsibilities, as well as the responsibilities of other similarly situated employees, was and continues to be controlled by Defendants as one person or group of persons, corporations, or other organizational units acting together.

34.    Upon information and belief, an arrangement existed between the corporate Defendants whereby such entities agreed to share the services of Plaintiffs and other employees.

35.    Upon information and belief, the corporate Defendants shared control of Plaintiffs and others similarly situated and Plaintiffs and others similarly situated performed work at and for both entities.

36.    Defendants exercised control oversite and direction over the terms and conditions of Plaintiffs', and similarly situated employees', working conditions and employment including, but not limited to, the power to: (i) hire, fire and discipline employees, (ii) determine rates and methods of pay, timekeeping and payroll, (iii) determine work schedules, (iv) supervise and control work of the employees, and (v) otherwise affect the quality of the employees' employment and employment practices.

37.    Further, at all times relevant, the Defendant entities were and now are related to or form an organization, the entities' holding, parent, sister and/or subsidiary corporation and/or alter egos of each other and Sachakov.  Further, upon information and belief, some, or all of the Defendant entities, are mere shell and sham entities without capital or assets and were conceived, intended and were used by Sachakov and the entities as a device to avoid liability and for the purposes of substituting a financially insolvent corporation, entity or related subsidiary or parent company.

38.     Plaintiffs further allege, upon information and belief, the Defendant entities, at all relevant times, were the alter egos of each other and Sachakov and there exists, and at all relevant times has existed, a unity of ownership between the Defendants such that any separateness has ceased to exist in that the entities, owners, members, and Sachakov used and continued to use, comingle, or restrict the assets for their own use, without adequate consideration and have withdrawn funds from these entities for its parent organizations and Sachakov's use and/or collusion, and at all times herein mentioned were, controlled, dominated, and operated by Defendant entities, their owners and Sachakov, as their individual business and alter ego, in that the activities and business of Defendants were and are carried out without the holding of proper directors or shareholders meetings, comingled funds and accounts, improper insurance, no records or minutes of any material corporate proceedings were maintained, and Defendants entered into misrepresented and sham transactions.

39.     Upon information and belief, at all times relevant to the allegations in this Complaint, Limni and Mezzaluna were, and continue to each be, an "enterprise engaged in commerce" within the meaning of the FLSA in that they (i) have and have had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and have had an annual gross volume of sales of not less than $500,000.

40.     Plaintiffs handled food products, alcohol, beverages, cleaning products, supplies and other goods and currency which traveled interstate and internationally.

41.     At all relevant times to this action, the primary business of Limni and Mezzaluna was the sale of food and drinks for consumption.

42.    Defendants knowingly and willfully operated their business with a policy and practice of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs and other similarly situated employees.

43.    Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

44.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees "spread of hours" premiums, in violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

45.    Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

46.    At all relevant times, Limni and Mezzaluna were, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA.

47.    At all relevant times, the work performed by Plaintiffs and others similarly situated, was directly essential to the restaurant business operated by Defendants.

48.    Defendants engaged in widespread, systematic and significant violations of Federal and New York State wage and hour statutes and implementing regulations.

## **STATEMENT OF FACTS**

49.    Defendants hire employees to work as managers and/or supervisors to participate in the day-to-day operations of Limni and Mezzaluna.

50.     Upon information and belief, Defendants Prezzano and Sachakov are typically present daily at Limni and Mezzaluna, and have supervisory authority over Plaintiffs and other similarly situated employees.  At all relevant times, Prezzano and Sachakov actively participated and participates in the day-to-day operation of the restaurant.  For instance, Prezzano and Sachakov are not only considered the boss, supervise and direct the work of the employees, including Plaintiffs, instruct them how to perform their jobs, and correct them for any errors made.

51.     Plaintiffs are back of the house and front of the house employees (bartenders, servers, cooks, etc.) who were not properly compensated, paid below minimum wage, improper overtime, were not paid for all hours worked, and were not paid at all for their last few weeks of work for Defendants.

52.     Plaintiffs and other employees worked over forty (40) hours per week for Defendants but were paid below minimum wage and not properly compensated.

53.     During those days in which Plaintiffs and similarly situated employees worked shifts that exceeded ten (10) hours, which occurred regularly, Defendants failed to pay the "spread of hours" premium of one (1) hour's pay at the statutory minimum wage rate, in contravention of the New York Labor Law.

**Plaintiff Elizabeth Makaj**

54.     Plaintiff Elizabeth Makaj worked as a "front of the house" employee for Defendants and her job duties included, among other things, bartending, serving, greeting/seating guests, cleaning, and submitting weekly schedules to Defendants.  Plaintiff Elizabeth Makaj did not supervise other employees and has no role in hiring, firing, or disciplining employees, nor does Plaintiff Elizabeth Makaj have a role in Defendants' financial operations or pay practices such as the rates of pay or payroll operations for employees.

55.     During the course of her employment, Plaintiff Elizabeth Makaj often worked in excess of forty (40) hours per week.

56.     During the course of her employment, Plaintiff Elizabeth Makaj often worked in excess of ten (10) hours per shift.

57.     Throughout the entirety of Plaintiff Elizabeth Makaj's employment, she was not paid proper minimum wages or overtime compensation. Defendants always paid Plaintiff Elizabeth Makaj well below the "tip credit" minimum wage.

58.     The lawful minimum wage is $15.00 per hour in New York and $7.25 per hour under the FLSA.  However, Plaintiff Elizabeth Makaj was misclassified as an "exempt" employee and paid a salary of $500.00 per week in a check and $300.00 in cash for all hours worked.  Since Plaintiff Elizabeth Makaj began working for Defendants, she routinely worked well over 40 hours per week, even as much as 60 to 80 hours per week.

59.     Thus, Plaintiff Elizabeth Makaj was paid less than $15.00 per hour for the first forty (40) hours of work in a given week, and less than $22.50 per hour for hours in excess of forty (40) each week.  Even if Defendants were entitled to take the $5.00 per hour "tip credit" under New York Law, which they were not, Plaintiff Elizabeth Makaj and other similarly situated employees were paid well below minimum wage.

**Plaintiff Bianca Makaj**

60.     Plaintiff Bianca Makaj worked as a "front of the house" employee for Defendants and her job duties included, among other things, bartending, serving, greeting/seating guests, cleaning, and submitting weekly schedules to Defendants.  Plaintiff Bianca Makaj did not supervise other employees and has no role in hiring, firing, or disciplining employees, nor does

Plaintiff Bianca Makaj have a role in Defendants' financial operations or pay practices such as the rates of pay or payroll operations for employees.

61.     During the course of her employment, Plaintiff Bianca Makaj often worked in excess of forty (40) hours per week.

62.     During the course of her employment, Plaintiff Bianca Makaj often worked in excess of ten (10) hours per shift.

63.     Throughout the entirety of Plaintiff Bianca Makaj's employment, she was not paid proper minimum wages or overtime compensation. Defendants always paid Plaintiff Bianca Makaj well below the "tip credit" minimum wage.

64.     The lawful minimum wage is $15.00 per hour in New York and $7.25 per hour under the FLSA.  However, Plaintiff Bianca Makaj was not paid more than $9.00 per hour for the first forty (40) hours of work in a given week and paid less than $22.50 per hour for hours worked in excess of forty (40) each week.   Even if Defendants were entitled to take the $5.00 per hour "tip credit" under New York Law, which they were not, Plaintiff Bianca Makaj and other similarly situated employees were paid well below minimum wage.

**Plaintiff Garrett Boelens**

65.     Plaintiff Boelens worked as a "front of the house" employee for Defendants as a server, but his duties included, among other things, bartending, serving, greeting/seating guests, cleaning and other chores.

66.     Plaintiff Boelens did not supervise other employees and has no role in hiring, firing, or disciplining employees, nor does Plaintiff Boelens have a role in Defendants' financial operations or pay practices such as the rates of pay or payroll operations for employees.

67. During the course of his employment, Plaintiff Boelens worked in excess of forty (40) hours per week.

68. During the course of his employment, Plaintiff Boelens worked in excess of ten (10) hours per shift.

69. Throughout the entirety of Plaintiff Boelens's employment, he was not paid proper minimum wages or overtime compensation. Defendants always paid Plaintiff Boelens well below the "tip credit" minimum wage.

70. The lawful minimum wage is $15.00 per hour in New York and $7.25 per hour under the FLSA.  However, Plaintiff Boelens was not paid more than $9.00 per hour for the first forty (40) hours of work in a given week and paid less than $22.50 per hour for hours worked in excess of forty (40) each week.   Even if Defendants were entitled to take the $5.00 per hour "tip credit" under New York Law, which they were not, Plaintiff Boelens and other similarly situated employees were paid well below minimum wage.

## **Plaintiff Douglas Martinez**

71. Plaintiff Martinez worked as a "back of the house" employee for Defendants as a cook, but his duties included, among other things, cleaning, and other chores.

72. Plaintiff Martinez did not supervise other employees and has no role in hiring, firing, or disciplining employees, nor does Plaintiff Martinez have a role in Defendants' financial operations or pay practices such as the rates of pay or payroll operations for employees.

73. During the course of his employment, Plaintiff Martinez worked in excess of forty (40) hours per week.

74. During the course of his employment, Plaintiff Martinez worked in excess of ten (10) hours per shift.

75.    Throughout the entirety of Plaintiff Martinez's employment, he was not paid proper minimum wages or overtime compensation.

76.    Plaintiff Martinez was misclassified as an "exempt" employee and paid a salary of $800.00 per week for all hours worked.  Since Plaintiff Martinez began working for Defendants, he routinely worked well over 40 hours per week, even as much as 60 or more hours per week.

77.    Thus, Plaintiff Martinez was paid less than $15.00 per hour for the first forty (40) hours of work in a given week, and less than $22.50 per hour for hours in excess of forty (40) each week.  Even if Defendants were entitled to take the $5.00 per hour "tip credit" under New York Law, which they were not, Plaintiff Martinez and other similarly situated employees were paid well below minimum wage.

## Defendants are Not Entitled to Any "Tip Credit"

78.    Defendants were not entitled to take any "tip credits" under federal or state law because they: (i) failed to properly provide notice to all tipped employees, including Plaintiffs, that Defendants were taking a "tip credit" in violation of the FLSA and New York Labor Law, (ii) failed to provide proper wage statements informing tipped employees, including Plaintiffs, of the amount of "tip credit" taken for each payment period, and (iii) caused tipped employees, including Plaintiffs, to engage in "side work" and non-tipped duties, which exceeded 20% of each workday, such as preparation work, cutting and juicing fruits, sweeping, cleaning, organizing, washing and distributing glasses, among other non-tipped work, thereby rendering the "tip credit" invalid.

79.    Plaintiffs and similarly situated employees were engaged in dual occupations for which they are entitled to the full minimum wage.

80.    Plaintiffs and similarly situated employees were required to perform substantial non-tipped work during their shifts and after "last call," when customers left and/or the restaurant was closed.

81.    Upon information and belief, Defendants' timekeeping system is or should have been capable of tracking multiple job codes for different work assignments, and/or Defendants were otherwise capable of tracking different work assignments. Despite this, Plaintiffs and similarly situated employees were not instructed to record the amount of time they spent performing side work, but instead were paid as "tipped" employees for all hours worked.

82.    Moreover, Defendants were not and are not entitled to take any "tip credit" under federal or state law because they failed to pay tipped employees, including Plaintiffs, the proper minimum wages afforded to tipped employees.

83.    During those weeks in which Plaintiffs worked in excess of forty (40) hours per week, if Defendants paid Plaintiffs overtime compensation at all, they did so at a rate below the statutory minimum of $22.50 per hour, which was improper and unlawful.

84.    Notwithstanding that Defendants are not entitled to take a "tip credit," even if the "tip credit" were applicable, Defendants paid below the statutory minimum wage for each hour worked, and if Defendants paid Plaintiffs overtime at all they failed to pay Plaintiffs the correct overtime compensation rate of time and one-half the statutory minimum wage, minus the "tip credit," in contravention of federal and state law.

## COLLECTIVE ACTION ALLEGATIONS

85.    Plaintiffs bring this action individually and as class representative on behalf of themselves and all other current and former non-exempt similarly situated front of house and back of the house employees including food runners, servers, hosts, bussers, servers, bartenders, cooks,

dishwashers and other front and back of the house employees who have been or were employed by Defendants since March 15, 2021 to the entry of judgment in this case (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage and/or at rates less than the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

86.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the Collective Action Members.

87.    Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are approximately thirty-five (35) or more such service employees, including food runners, servers, hosts, bussers, servers, bartenders and other front of the house crew members who earned tips ("Tipped Employees"), as well as back of the house employees, such as cooks and dishwashers ("Non-Tipped Employees"), employed by Defendants at any given time, and perhaps hundreds of Collective Action Members who worked for the Defendants during the Collective Action Period and did not receive the legally-required minimum wages for all hours worked and legally required overtime premium payments for all hours worked in excess of forty (40) hours per week, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

88.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

89.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

90.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

91.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

    a.    Whether the Defendants employed Plaintiffs and Collective Action Members within the meaning of the FLSA;

    b.    Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Collective Action Members;

c.   What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

d.   Whether the Defendants failed to pay Plaintiffs and Collective Action Members statutory minimum wages and overtime compensation;

e.   Whether Defendants provided Plaintiffs and Collective Action Members with proper notice of the "tip credit" and otherwise utilized the tip credit properly;

f.   Whether Defendants were properly entitled to claim a "tip credit" against minimum wages earned and if so, whether Defendants properly paid Plaintiffs and Collective Action Members at the correct minimum wage for tipped employees;

g.   Whether the Defendants failed to pay Plaintiffs and Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

h.   Whether the Defendants failed to create and maintain adequate records of the pay received by Plaintiffs and Collective Action Members in violation of federal and state law;

i.   Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

j.   Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees.

92.   Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

93.    Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

94.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

95.    Plaintiffs bring the New York Labor Law claims on behalf of all persons who were employed by Defendants as Tipped Employees and Non-Tipped Employees at any time since March 15, 2018 to the entry of judgment in this case (the "Class Period") who were non-exempt, within the meaning of the New York Labor Law and have not been paid and still are not paid minimum wages, overtime compensation, or "spread of hours" premiums, in violation of the New York Labor Law (the "Class").

96.    Upon information and belief, the persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, the Class consists of all non-managerial current and former front of house and back of house employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims. Upon information and belief, there are hundreds and potentially thousands of Class Members.

97.    Plaintiffs and the Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' policies and practices affected all Class Members similarly, and

Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Class Members.

98.    The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

99.    The Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

100.    Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

101.    Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class or Collective Action Members.

102.    Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members. Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments, and they understand they may be called upon to testify in depositions and at trial.

103.    Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

104.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.    Whether the Defendants employed Plaintiffs and Class members within the meaning of the New York Labor Law;

b.    Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class;

c.    What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

d.    Whether the Defendants failed to pay Plaintiffs and members of the Class statutory minimum wages;

e.    Whether Defendants properly provided notice to all tipped employees that Defendants were taking a "tip credit";

f.    Whether Defendants may avail themselves of the tip credit and pay the Class members at the tipped minimum wage.

g.    Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of the tip credit taken for each pay period and their proper overtime compensation rate, and (ii) all non-exempt employees information required to be provided on wage statements as required under the New York Labor Law;

h.    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workday or workweek;

i.   Whether the Defendants failed to pay the Plaintiffs and members of the Class proper overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law;

j.   Whether Defendants failed to create and maintain adequate records of the pay received by Plaintiffs and members of the Class and proper annual wage notices in violation of the New York Labor Law;

k.   Whether Defendants failed to pay Plaintiffs and members of the Class "spread of hours" premium when their workday exceeded ten (10) hours;

l.   Whether Defendants failed to pay uniform cost and maintenance compensation; and

m.   Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees.

## STATEMENT OF CLAIM

### COUNT I
### [Failure to Pay Minimum Wage and Overtime - Fair Labor Standards Act]

105.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

106.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiffs and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

107.    At all relevant times, Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

108.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

109.    Plaintiffs and the Collective Action Members worked hours for which they were not paid the statutory minimum wage.

110.    Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the Collective Action Members for hours worked.

111.    Defendants willfully failed to pay Plaintiffs, and the Collective Action Members minimum wages in the lawful amount for hours worked.

112.    Defendants were not entitled to a "tip credit," which would allow Defendants to pay Plaintiffs and the Collective Action Members at a reduced minimum wage because they failed to provide proper notice to all tipped employees that Defendants were taking a "tip credit," thereby rending the "tip credit" invalid in respect of all tipped employees.

113.    Defendants also were not entitled to a "tip credit" because Defendants required Plaintiffs and the Collective Action Members to perform a substantial amount of non-tip producing "side work" in excess of twenty percent (20%) of their time at work. During these periods, Defendants have compensated Plaintiffs and the Collective Action Members at below the tipped minimum wage rather than the full hourly minimum wage rate.

114.    Plaintiffs and the Collective Action Members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

115.    Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

116.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

117.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiffs and the Collective Action Members.

118.    As a result of the Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

119.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

120.    Due to the unlawful acts of the Defendants, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

121.    Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Failure to Pay Wages, Minimum Wage and Overtime - New York Labor Law]

122.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in preceding paragraphs of this Complaint as if fully set forth herein.

123.    At all relevant times, Defendants employed Plaintiffs, Collective Action Members, and members of the Class within the meaning of New York Labor Law §§ 2 and 651.

124.    Defendants knowingly and willfully violated the rights of Plaintiffs, Collective Action Members, and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked and failed to pay them compensation for all hours worked.

125.    Defendants were not entitled to a "tip credit," which would allow Defendants pay Plaintiffs, Collective Action Members, and Class members at a reduced minimum wage because they: (i) failed to provide proper notice to all tipped employees that Defendants were taking a "tip credit" in violation of the New York Labor Law, (ii) failed to provide proper wage statements informing tipped employees of the amount of the tip credit taken for each pay period in violation of the New York Labor Law, and (iii) caused tipped employees to engage in non-tipped duties that exceeded 20% of each workday in violation of the New York Labor Law, thereby rending the "tip credit" invalid in respect of all tipped employees.

126.    Plaintiffs, Collective Action Members and Class members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of forty (40) per workweek.

127.    Defendants failed to pay Plaintiffs, Collective Action Members and Class members overtime compensation in the lawful amount for all hours worked in excess of forty (40) per week in direct contravention of the New York Labor Law.

128.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs, Collective Action Members and Class members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the New York Labor Law.

129.    Defendants knowingly and willfully disregarded the provisions of the New York Labor Law as evidenced by their failure to compensate Plaintiffs, Collective Action Members and Class members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week when they knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiffs and Class members.

130.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid compensation, unpaid minimum wages, unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al*. and § 198.

### COUNT III
### [Failure to Pay "Spread of Hours" - New York Labor Law]

131.    Plaintiffs allege and re-aver each and every allegation and statement contained in preceding paragraphs of this Complaint as if fully set forth herein.

132.    At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been the employer of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

133.    Defendants failed to pay Plaintiffs and the Class compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the

beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than ten (10) hours.

134.    Defendants failed to pay Plaintiffs and the Class the spread of hours compensation to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

135.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al*. and § 198.

**COUNT IV**
**[Uniform Cost and Maintenance Pay - New York Labor Law]**

136.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in all preceding paragraph of this Complaint as if fully set forth herein.

137.    Defendants required Plaintiffs and the Class to purchase, at their own cost, a specific uniform consisting of a unique "gingham" style shirt and pants, which Plaintiffs and the Class would not otherwise have purchased, and did not, and could not, utilize this required uniform as part of their wardrobe outside of work.

138.    Defendants did not reimburse Plaintiffs or the Class for purchasing the required uniforms.

139.    Defendants also required Plaintiffs and the Class to wear specific masks which had to be purchased from Defendants, and Plaintiffs were not reimbursed.  Employees also were not provided a sufficient number of uniforms to wear consistent with the average number of days per week they worked.

140.   Defendants did not launder, or offer to launder, these uniforms for employees or provide employees with any employer-provided service to clean the uniforms.  Rather, Plaintiffs and other employees were required to wash and iron their uniforms daily and at their own cost.

141.   Plaintiffs and the Class's uniforms were used for the expressed benefit of Defendants, and it was a condition of their employment to wear them during each shift.

142.   Defendants never paid Plaintiffs or the Class any uniform maintenance pay or reimbursement for the cost of purchasing and maintaining uniforms in violation of 12 NYCRR §§ 146-1.7 and 1.8.

143.   Plaintiffs and the Class routinely spent money, and off-the-clock time working, to clean and maintain their uniforms consistent with the uniform appearance standards Defendants required.

144.   In addition, Plaintiffs and the Class were required to use their personal cell phones, at their own cost, for a variety of work-related duties assigned by Defendants, including scheduling, taking pictures, and contacting supervisors and other employees.

145.   Defendants did not reimburse Plaintiffs or the Class for these expenses and they were paid at a rate below minimum wage.  Therefore, Defendants violated 12 NYCRR § 146-2.7.

146.   Defendants' conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 NYCRR § 146 of the Hospitality Minimum Wage Order and Plaintiffs and the Class are entitled to all damages available under the law, including but not limited to, the cost of purchasing uniforms, the cost of maintenance, all hours worked and unpaid wages, liquidated damages, interest attorney's fees and costs.

## COUNT V
### [Failure to Provide Proper Wage Statements and Notices - New York Labor Law]

147.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

148.    Upon information and belief, Defendants' record keeping practices were intended to, and did in fact, disguise the actual number of hours the employees worked, in order to avoid paying for their full hours worked; and, overtime due.

149.    Defendant willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate and complete timesheets, wage notices, and payroll records.

150.    Plaintiffs and the Class were not provided with a proper, written wage notice, and not provided with annual wage notices, as required by law. NYLL § 195(1).

151.    The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, with every payment of wages, of the dates of work covered, the rate of pay and basis thereof, hours worked, gross wages, deductions, allowances, and net wages.

152.    Defendants' failure to provide an accurate annual wage notice entitles Plaintiffs and the Class each to statutory damages of fifty dollars ($50.00) per week for each work week the violation continued to occur, to a maximum of five thousand dollars ($5,000) each for violations of the wage statement and notice requirements pursuant to New York Labor Law § 198(1-b).

153.    Defendants failed to furnish Plaintiffs and members of the Class with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 137-2.2; 146-2.3.

154.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

155.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations §§ 137-2.1; 146-2.1.

156.    Defendants failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act, and as such, are liable for civil penalties, attorneys' fees, and costs.

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiffs Elizabeth Makaj, Bianca Makaj, Patrick Boelens, and Douglas Martinez, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully requests that this Court grant the following relief:

(a)    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Collective Action Members who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

(b)    An award of unpaid minimum wages and compensation due under the FLSA and New York Labor Law;

(b)     An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)     An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

(e)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages, overtime compensation, and "spread of hours" premiums pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f)     An award of civil penalties pursuant to the notice provisions of the New York State Wage Theft Prevention Act;

(g)     An award of prejudgment and post-judgment interest;

(h)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees;

(i)     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; and,

(j)     Such other and further relief as this Court determines to be just and proper.

<u>**JURY DEMAND**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands trial by jury on all issues.

Dated:  White Plains, New York
        March 15, 2024

                              Respectfully submitted,

                              VALIANT LAW
                              2 Westchester Park Drive, Suite 205
                              White Plains, New York 10604
                              Telephone: (914) 730-2422
                              Facsimile: (909) 677-2290
                              *Counsel for Plaintiffs*

              By:    *s/ Joseph Jeziorkowski*
                     Joseph Jeziorkowski, Esq.
                     Daniel Folchetti, Esq.