UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH MAKAJ, BIANCA MAKAJ, GARRETT PATRICK BOELENS, DOUGLAS MARTINEZ, and EVER MARTINEZ,<br><br>                              Plaintiffs,<br><br>          -against-<br><br>LIMNI LLC, dba LIMNI MEDITERRANEAN KITCHEN, MEZZALUNA DUE INC. dba MEZZLUNA PIZZERIA & RESTAURANT, ROBERT PREZZZANO, NISIM SACHAKOV, and CHRISTINA SACHAKOV,<br><br>                              Defendants. | Case No.: 24 CV 1980 (CS) |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

The plaintiffs are former employees of Limni and Mezzaluna ("Defendants"), restaurants owned and operated by the individual defendants.[1] Plaintiffs and Defendants, collectively referred to as the "Parties" herein, respectfully make this request that the Court approve their settlement of the above-captioned matter. As the Plaintiffs' action and claims arise under the Fair Labor Standards Act, 29 USC § 216(b) ("FLSA"), the Parties' settlement must be approved by this Court.

> The Fair Labor Standards Act expressly prohibits settlement of any right to unpaid minimum wages or unpaid overtime claims by employees, made pursuant to 29 USC §§ 206-07, without the supervision of the Secretary of Labor. 29 USC §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to FLSA's restriction on settlement to include judicially-supervised stipulated settlements. *See Cheeks v. Freeport Pancake House, 2015 WL 4664283 (2d Cir. August 7, 2015); See also,*

---

[1] The claim is brought by five (5) individuals who are, collectively, "plaintiffs" herein. This action is not a class action, so there are no unrepresented/putative plaintiffs. Defendants are corporate entities doing business as restaurants in Westchester County, and its principals Robert Prezzzano, Nisim Sachakov, and Christina Sachakov, all of whom are collectively referred to as "Defendants".

*Manning v. New York Univ.*, 2001 WL 963982, *12-13 (SDNY 2001)(*citing D.A. Schulte, Inc., v. Gangi*, 328 US 108, 113 n.8 (1946) and *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982).

The Parties have executed a written settlement agreement (the "Settlement Agreement"), a copy of which is annexed as Exhibit "1", and jointly ask the Court to approve the settlement and, upon completion of payments, allow the parties to file a dismissal of the case with prejudice as set forth in the proposed stipulation and order of dismissal.

## I.   PROCEDURAL HISTORY

The case has a lengthy procedural history. Plaintiffs filed the Complaint on March 15, 2024, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and violations of Articles 6 and 19 of the New York State Labor Law ("NYLL") and their supporting New York State Department of Labor regulations. [Dckt No. 1]. Default proceedings were initially pursued until August 2024, when Defendants appeared and filed an answer, generally denying the allegations of the Complaint. [Dckt. No. 45]. Defendants retained counsel familiar with wage and hour laws, and discovery commenced

In September 2024 the parties attempted a settlement conference with the Magistrate Judge, but did not resolve the case. On November 27, 2025 the plaintiffs amended the complaint to add a plaintiff, an additional defendant and to remove the collective action allegations.

On September 20, 2024, after unsuccessful settlement meetings with the Magistrate Judge, the Court referred the action to Court-Ordered mediation, pursuant to E.D.N.Y. mediation program. [Dckt. No. 54].

Multiple mediation sessions were held before Mediator Kim Berg, Esq., well known to the employment law bar as a successful employment dispute mediator. Formal discovery occurred in parallel, while the parties worked within the EDNY mediation program during several months, and ultimately, with Mediator Berg's assistance and upon her proposal, we resolved the case.

## II.     FACTUAL BACKGROUND

The plaintiffs worked at the defendant restaurants. The plaintiffs did not seek collective action certification of the case. No non-parties current or former employees will be affected by the settlement of this case. Defendants allegedly failed to pay each of the Plaintiffs overtime compensation at the statutory rate of time and one-half for each hour worked in excess of forty (40) per week in direct contravention of federal and state law. Instead, defendants paid plaintiffs straight time for all hours worked. Voluminous documents were exchanged by the parties. Naturally, the employer alleged the payroll practices were compliant with applicable law and regulations, and there is no viable claim. Plaintiffs' calculations were necessarily estimations and reflect serious overtime compensation violations. Attached as Exhibit "2" is a chart demonstrating plaintiffs' "best case scenario". Plaintiffs alleged they did not receive an accurate wage statement triggering statutory penalties capped at $10,000 per employee.

The document production in this action included hundreds of pages of payroll records for the plaintiffs as well as financials, which both sides suggested supported their respective claims and defenses.

Plaintiffs' counsel estimated their best-case scenario recovery to be in excess of $1,000,000. One of the restaurants was closed and the defendants demonstrated documented severe financial constraints / distress, making settlement over time necessary, and settlement in general important. Plaintiffs' hired an investigator who ability to collect a large judgment would be a consideration and it is a factor factoring settlement.

## III.     THE SETTLEMENT

In their best-case scenario plaintiffs' total damages exceeded $1,000,000.00 This included unpaid wages and overtime compensation, spread-of-hours premiums, liquidated damages at 100% of their damages, statutory penalties, prejudgment interest, and attorneys' fees. Of course,

defendants had defenses which were supported by documents and witnesses, and the eventual outcome of the case entailed risk to all parties. And this is an immigrant-owned restaurant struggling to survive. The case proceeded on parallel tracks: discovery in the District Court; and settlement. Throughout all proceedings, all parties participated in good faith and with experienced counsel and a skilled mediator.

The parties represent to the court that the settlement is a fair and reasonable resolution of bona fide disputes, reached as a result of contested litigation from pleadings and substantial discovery including the exchange of documents by the parties, court-facilitated mediation, and ultimately resolution of a difficult case. The amount of the settlement is one hundred fifty thousand dollars ($150,000.00), payable in twenty-seven (27) installments. The settlement provides for each individual's recovery based upon a allocation proportionate to the size of their claim. Plaintiffs had two (2) firms which will share legal fees as follows: Valiant Law: $30,000 Cilenti & Cooper, PLLC: $30,000 in full satisfaction of attorneys' fees; all costs including filing fees, mediation, service and investigation (including an asset search investigation), are going to be waived. Counsel will distribute the correct amounts to the plaintiffs as a proportionate share of each settlement payment and will also receive a portion of its fees and costs from each payment. In other words, attorneys' fees will not be paid any earlier than plaintiffs receive their settlement payments.

Exhibit "3" to this application are plaintiffs' counsels' billing records. Notably, the settlement provides protection to the plaintiffs in case of non-payment. The settlement contemplates that the court will retain jurisdiction enter judgment for double the outstanding balance in the event of nonpayment and failure to cure the default.

All parties recognized that there were valid factual disputes concerning the hours worked by the plaintiffs and the sufficiency of the wages they were paid.

Counsel on both sides have experience in this area of practice and worked with their respective clients to reach a fair and efficient resolution. Indeed, the parties respectfully submit that the settlement clearly "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Here, the settlement was reached as a result of repeated arm's length negotiations over the course of a year, between counsel who are well versed in the prosecution and defense of wage and hour collective actions, and after countless meetings and phone calls between counsel and at court-ordered mediation. Courts typically regard the adversarial nature of a litigated FLSA case resolved via mediation to be a good indicator of the fairness of the settlement. *See*, *Aponte v. Comprehensive Health Management, Inc.*, 2013 WL 1364147 at *4 (S.D.N.Y. 2013).

## IV.     ATTORNEYS' FEES

Both the FLSA and the Labor Law provide for awards of attorneys' fees and costs to plaintiffs who prevail on their claims under those statutes. *See* 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added); N.Y. Lab. Law 198(1-a), 663(1). The FLSA and state wage and hour laws provide for fee-shifting to ensure that workers are not disadvantaged when they use the courts to recover unpaid wages guaranteed by statute. The fee-shifting provisions are intended to help overcome these hurdles and encourage competent counsel to take on representations and skillfully represent their clients. In this case plaintiffs' counsel requests one-third pursuant to its retainer with the plaintiffs. Recognizing the "significant risks" undertaken by attorneys who work on contingency, the New York State Court of Appeals has upheld such agreements of one-third or higher. *In Re: Lawrence*,

2014 WL 5430622 (NY October 28, 2014). In this case, plaintiffs had joint counsel (two (2) firms) and the fees requested are less than what the firms would have billed hourly in its representation plaintiffs. The two (2) firms' billing records are annexed hereto as Exhibit "3".

With regard to the court's cross-check for the reasonableness of fees, Attorney Peter Cooper has been plaintiffs' counsel since the inception of the case in early 2020. He graduated from Vermont Law School with a J.D. in 1995, where he was an Editor of the Vermont Law Review. In the thirty (30) years since he was admitted to practice in the State of New York and the Southern District of New York, he has litigated thousands of cases from inception through disposition. He has practiced in New York State Supreme Court, the Appellate Divisions of the New York Supreme Court, and the Federal District Courts for the Southern and Eastern Districts of New York. He has also appeared before the New York Court of Appeals. In the trial of *Garcia-Severino v. TDL Restoration*, this Court found Mr. Cooper's hourly rate of $400.00 per hour to be appropriate. *Garcia-Severino v. TDL Restoration*, SDNY 18 Civ. 11401 (CS), Docket 36, p. 4.

Attorney Joseph Jeziorkowski received his Juris Doctorate degree from Chapman University School of Law in 2010. He was admitted to the New York bar in 2011 and the California Bar in 2022 and is admitted to the bars of the United States District Courts for the Eastern and Southern Districts of New York, and the Southern, Central and Northern Districts of California. Prior to establishing the New York Office of Valiant Law, he was associated with well-known New York and National Law firms, and also as served as in-house litigation counsel for a large national insurance company, Continental Casualty Company, or "CNA" for several years.

A substantial portion of Mr. Jeziorkowski's practice is prosecuting wage and hour matters, including class and collective claims. *See*, *e.g., Rose v. Barteca Restuarants LLC, et al.*, 7:23-cv-07143 (S.D.N.Y.) (involving claims that several categories of employees were not paid minimum

wage, overtime, uniform maintenance, forced to work off the clock, and the employer improperly applied the tip credit to employees' hourly rate); *Contreras v. Charles A. Walburg Multi-Service Org.*, 1:22-cv-09971 (S.D.N.Y.) (involving claims that a category of employees were paid straight time for their overtime hours worked and improperly paid on a bi-weekly basis); and, *Bloise v. Salcedo Cargo Express, Inc.*, 1:23-cv-07462 (S.D.N.Y) (involving claims where a category of employees were misclassified as exempt and paid less than minimum wage and no overtime).

Attorney Daniel Folchetti received his Juris Doctorate degree from Brooklyn Law School in 2002. He was admitted to the New York bar in 2003 and is admitted to the bars of the United States District Courts for the Eastern, Northern and Southern Districts of New York, as well as the 2nd Circuit Court of Appeals. Prior to joining Valiant Law, he was a partner with a New York law firm. Prior to this, he served as a senior litigation attorney for a large national insurance company, Continental Casualty Company, or "CNA", for over a decade. Mr. Folchetti has litigated hundreds of cases from inception through disposition, including wage and hour matters on a class and individual basis.

## V.    CONCLUSION

Wherefore, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties in the amount of $150,000 and require counsel to dismiss the instant action between the parties with prejudice, at the time of the first payment. The Agreement significantly decreases the risk of collection by permitting a reasonable settlement without the parties having to incur the expense, tremendous delay, and significant risk of trial. The parties seek fees to be paid from the settlement. The fee fairly approximates what plaintiffs' counsel would have billed on an hourly basis.

WHEREFORE, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties, and order the parties to file the dismissal of the action with prejudice as set forth in Exhibit "3", or a joint status report, confirming consummation of the settlement.

Dated: May 28, 2025
New York City

| /s/ Peter Hans Cooper ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ Peter Hans Cooper, Esq. CILENTI & COOPER, PLLC **Co-counsel for Plaintiffs** 60 East 42nd Street – 40th Floor New York, NY 10165 /s/ Anthony G. Mango ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ Anthony G. Mango, Esq. MANGO & IACOVIELLO LLP **Counsel for Defendants** 14 Penn Plaza – Suite 1919 New York, New York 10122 | /s/ Joseph Jeziorkowski ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ Joseph Jeziorkowski, Esq. VALIANT LAW **Co-counsel for Plaintiffs** 2 Westchester Park Dr. – Suite 205 White Plains, New York 10604 |